GENERAL INVESTMENT COMPANY, Respondent, *v.* INTERBOROUGH
RAPID TRANSIT COMPANY, Appellant.

First Department, April 21, 1922.

Bills and notes — action to recover on part of series of corporate notes
payable to bearer secured by collateral indenture — application for
summary judgment under Rules of Civil Practice, rule 113 — rule 113
applicable to action begun before October 1, 1921 — denial of knowledge
or information sufficient to form belief treated as sham and raised
no issue — provision in collateral indenture that holder of notes could
not enforce collateral except on certain conditions, not defense to
action on primary indebtedness represented by notes — provision in
notes referring to collateral did not affect primary liability of maker —
plaintiff corporation is real party in interest although owned by indi-
vidual — pendency of suit in Federal courts no defense — depositions —
notice for examination of plaintiff's officers properly set aside where
no issue raised by answer.

In an action to recover on five promissory notes payable to bearer, constituting
part of a series of notes issued by the defendant corporation and secured by a
collateral indenture, the defendant denied that it had any knowledge or infor-
mation sufficient to form a belief as to the plaintiff's ownership of the notes in
suit, but on the argument of a motion by the plaintiff to set aside the notice
of taking the testimony of the officers and directors of the plaintiff, and to
strike out the defendant's answer and for summary judgment under rule 113
of the Rules of Civil Practice, it appeared that the notes in question were
purchased in the open market, were produced in open court by the plaintiff,
that they were presented for payment at the place stipulated, and that the
defendant's agent after receiving the coupons for the semi-annual interest paid
the same to the plaintiff.

*Held*, that the issue attempted to be raised in the answer by defendant's denial
of knowledge or information sufficient to form a belief as to the present owner-
ship of the notes was clearly a sham, and that the court properly regarded as
frivolous such denial by the defendant, and no issue whatever was raised
thereby.

Rule 113 of the Rules of Civil Practice is applicable to actions commenced prior·
to October 1, 1921.

The provisions in the collateral indenture securing the notes to the effect that
the holder of any note should not have the right to institute any suit or action
for the enforcement of the indenture, or for any remedy thereunder, except on
certain conditions set out in the indenture, does not constitute a defense to this
action, which is purely one to recover upon the primary indebtedness represented
by the defendant's promissory notes.

Each of said notes contains an express promise of the defendant to pay to the
bearer the face thereof on the day and at the place stated and there is no
qualification or limitation whatever upon the positive promise to pay, nor any
restriction to the holder's right to sue to recover upon the primary indebtedness
and a provision in the note thereafter reciting that the note is one of the series
secured by the collateral indenture and providing for redemption or exchange
of the notes for bonds and that no recourse for payment of the bonds or interest
could be had against any officer of the defendant, did not in any way affect the
primary liability of the maker of the notes to the holders thereof for the principal
and interest secured thereby.

The remedy of the holder of a note on the defendant's primary obligation to pay
the amount and the remedy under the collateral indenture to enforce the security
are entirely separate and distinct.

As the plaintiff was not a party to said collateral indenture, it was in no wise bound by the clause therein limiting the right of noteholders to institute any suit or action for the enforcement of the indenture.

The fact that the plaintiff, a corporation, was owned and controlled by an individual does not make that individual the real party in interest so that the action should have been brought by him; the notes are payable to bearer, they are in the plaintiff's possession and were produced by the plaintiff, and payment thereof to the plaintiff will protect the defendant from the claims of third parties, and, therefore, the plaintiff is the real party in interest.

The defense of another action pending in the Federal courts is without merit, *first,* because the pendency of a Federal suit, even were it between the same parties and for the same notes, would be no defense to an action in the State courts, and *second,* because the Federal suit was brought by another person.

The answer interposed by the defendant did not raise any issue, and, therefore, the court properly set aside the notice for the examination of the plaintiff's officers.

APPEAL by the defendant, Interborough Rapid Transit Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of January, 1922, granting plaintiff's motion to vacate and set aside the notice of taking the testimony of the officers and directors of the plaintiff in behalf of the defendant; and that the defendant's answer herein be stricken out; and that judgment be directed to be entered thereon by the clerk, pursuant to rule 113 of the Rules of Civil Practice, in favor of the plaintiff and against defendant for the relief demanded in the complaint.

*James L. Quackenbush* [*Delancey Nicoll* of counsel; *A. H. Cole* with him on the brief], for the appellant.

*Elijah N. Zoline* of counsel, for the respondent.

MERRELL, J.:

This action is brought to recover upon five promissory notes made by the defendant and alleged to be owned by the plaintiff, a foreign corporation organized under the laws of the State of Maine. The notes in suit were a part of a series of promissory notes made, issued and delivered by the defendant for value received, on September 1, 1918. · Said notes, by their terms, became due and payable on September 1, 1921, and aggregated in amount $33,400,000. The notes, by their terms, were made payable to the bearer thereof, or, if registered, to the registered holder thereof, at the office of J. P. Morgan & Co., in the borough of Manhattan, city of New York, with interest thereon at the rate of seven per centum per annum, payable semi-annually. In its complaint the plaintiff alleges that it was, on the date of maturity of said notes, the owner and legal holder of five thereof, each of which was payable to bearer, the serial numbers of which being M-1000, M-15516, M-15519, M-15520 and M-15521; and that at the maturity of said

notes the same were duly presented for payment at the place where the same were made payable by the terms thereof, and demand of payment was duly made and refused; and that no part of the principal of said notes has been paid; and the plaintiff, in its complaint, demands judgment against the defendant in the sum of $5,000 principal, with interest from the 1st day of September, 1921, besides the costs of the action.

The answer of the defendant admits the making of the said five promissory notes in suit, payable to bearer, and that the same were presented for payment upon maturity at the place where the same were made payable by the terms thereof; that payment thereof was refused; and that no part of the principal of said notes has been paid; and alleges that said notes are a part of a series of notes of the defendant outstanding and aggregating in amount $33,400,000. The defendant's answer, however, puts in issue, by a denial of knowledge or information sufficient to form a belief thereof, the plaintiff's ownership of the notes in suit. The answer also sets forth and alleges two separate defenses: *First*, that the promissory notes in suit are a part of an issue of notes issued and sold by the defendant under a collateral indenture, dated September 1, 1918, between the defendant and the Bankers' Trust Company, a corporation duly organized and existing under the laws of the State of New York, as trustee, to secure the issue of $33,400,000 three-year secured convertible seven per cent gold notes, which notes were certified by the trustee as in said collateral indenture provided, and were issued and sold by the defendant. The defendant further alleges that the notes of said issue were of like tenor and form and were equally and ratably secured by said collateral indenture; and that each of said notes, upon its face, referred to said indenture for the rights of the holders of said notes. The said collateral agreement is not before the court, and we are not advised of its terms, except that the answer purports to set forth section 13 of article VI thereof, as follows:

" Sec. 13. *No holder of any note hereby secured shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this indenture, or for the execution of any trust hereof, or for the appointment of a receiver, or for any other remedy hereunder,* unless such holder previously shall have given to the Trustee written notice of such default and of the continuance thereof, as hereinbefore provided; nor unless, also, the holders of twenty-five percent. in principal amount of the notes hereby secured, then outstanding, or any one holder of not less than ten percent. in amount of such notes who shall have been the holder of notes to that amount for at least six months next preceding the time thereof,

shall have made written request upon the Trustee, and shall have afforded to it a reasonable opportunity either to proceed to *exercise the powers hereinbefore granted*, or to institute such action, suit or proceeding in its own name, nor unless, also, they shall have offered to the Trustee security and indemnity satisfactory to it, against the costs, expenses and liabilities to be incurred therein or thereby; and such notification, request and offer of indemnity are hereby declared, in every such case, at the option of the Trustee, to be conditions precedent to the execution of the *powers and trusts of this indenture*, and to any action or cause of action, or for any remedy *hereunder;* it being understood and intended that *no one or more holders of notes and coupons shall have any right in any manner whatever to affect, disturb or prejudice the lien of this indenture* by his or their action, or to enforce *any right hereunder*, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained or in the manner herein provided and for the equal benefit of all holders of such outstanding notes and coupons.

" All rights of action under this indenture, or under any of said notes, may be enforced by the Trustee without the possession of any such notes, or the production thereof on the trial or other proceedings relative thereto, and any such suit or proceedings instituted by the Trustee shall be brought in its name as Trustee, and any recovery of judgment shall be for the ratable benefit of the holders of said notes."   (Italics are the writer's.)

In its said first and separate defense contained in its answer, the defendant alleges that before the institution of this action the plaintiff did not give to the trustee written notice of default and of the continuance thereof, as provided in said section 13 above quoted; and that neither the holders of twenty-five per cent in principal amount of the notes issued and secured by said indenture and outstanding, nor did any holder of not less than ten per cent of the amount of such notes make written request of the trustee to proceed to exercise the powers in said indenture granted or to institute an action, writ or proceeding in its own name, as provided in such indenture.  The position of the defendant is that the plaintiff, even if the owner and holder of the notes in suit, cannot bring action to recover judgment therefor, but that, under the collateral agreement, such a right of action was the sole prerogative of the trustee.

As a second separate defense, the defendant, in its said answer, alleged the pendency of a prior action in the United States District Court for the Southern District of New York, brought, not by the plaintiff, but by another corporation, known as the Continental

Securities Company. In this connection the defendant alleges that the plaintiff is not the real party in interest, but that one Clarence H. Venner is the real party in interest by reason of his domination and control of both the plaintiff and the said Continental Securities Company. The answer also contains various allegations charging said Venner with litigiousness, but these latter allegations were stricken out of the answer as scandalous upon application to the court subsequently made.

The defendant gave notice, under sections 288, 289 and 290 of the Civil Practice Act, to take the depositions of the plaintiff's officers and directors before trial in support of the issues raised by the allegations contained in the defendant's said second separate defense. The plaintiff moved to vacate said notice upon the ground that it was not authorized as applying to this action, which was pending before October 1, 1921. That motion was heard and denied by the court at Special Term. Thereafter the plaintiff applied to the court below for an order vacating the notice for the examination of plaintiff's officers concerning said second defense, as the same was insufficient in law upon the face thereof and created no issue, and, therefore, the testimony of plaintiff's officers was immaterial and unnecessary to the defense of the action. Plaintiff also contended that the first defense was insufficient in law and created no issue, and that, therefore, the only issue presented by the pleadings was that raised by the denial of any knowledge or information sufficient to form a belief as to plaintiff's ownership of the notes in suit. By the order appealed from said notice for the examination of plaintiff's officers was vacated, and the plaintiff was granted summary judgment under rule 113 of the Rules of Civil Practice. I think the order was correct and should be in all things affirmed.

Upon the argument of the application there was presented an affidavit of plaintiff's secretary, who had knowledge of the facts, showing the acquisition by plaintiff by purchase in the open market of the notes in suit. The notes were produced in open court by the plaintiff on the argument of the motion, and it appeared conclusively and without dispute that the notes were presented for payment by the plaintiff's secretary in person at the office of J. P. Morgan & Co., in the borough of Manhattan, New York city, where the notes, by their terms, were made payable, and that there was then separated from said notes the coupons for the semi-annual interest, which became due September 1, 1921; that said coupons were delivered to J. P. Morgan & Co., who, in turn, delivered to the plaintiff's secretary its firm check for the amount of said coupons, payable to the order of the plaintiff. Under such circumstances, the court, I think, very properly held that the issue attempted to

be raised in the answer by the defendant's denial of knowledge or information sufficient to form a belief as to the present ownership of the notes was clearly a sham, and that the court properly regarded as frivolous such denial by the defendant. (See 118 Misc. Rep. 11.)

Upon the argument of the plaintiff's application the defendant took the position that rule 113 did not apply to actions commenced prior to October 1, 1921, thus reversing its position from that which it took when it sought to take the depositions of the plaintiff's officers, pursuant to the provisions of the Civil Practice Act. I think there is no force to defendant's present position, and that the decision in *MacDonald* v. *Wills & Co., Ltd.* (199 App. Div. 203; N. Y. L. J. editorial, Jan. 9, 1922) is ample authority against the defendant in this respect. The Fourth Department held in that case that the court should apply, so far as possible, the remedial sections of the Civil Practice Act to actions commenced prior to October 1, 1921. As to the scope of rule 113, Mr. Justice PAGE, of this court, in the recent case of *Dwan* v. *Massarene* (199 App. Div. 872) said: "A fictitious denial, the effect of which was merely intended to force the plaintiff to prove his cause before a jury has no place in the Code system of pleading. It was a relic of the artificial common-law pleading, which had persisted because of the resistance of the courts to the expressed will of the Legislature. With the intention of doing away with this technicality and fruitful source of delay and expense to the enforcement of a just and legal claim to which there was no defense in fact, the convention adopted rules 113 and 114." I am, therefore, of the opinion that the denial of knowledge or information sufficient to form a belief as to the plaintiff's ownership of the notes in suit raised no issue whatever under the circumstances of this case.

As to the first and separate defense contained in defendant's answer, that the plaintiff is precluded from bringing action upon the notes in suit for the reason that they were a part of the issue secured by said collateral agreement, and that the only party who could bring action thereon was the trustee named in said collateral agreement, I think there is no force whatever in the defendant's contention. The action is not brought under the collateral agreement or to enforce any possible rights of the plaintiff by virtue thereof. The action is purely one to recover upon the primary indebtedness represented by defendant's said promissory notes. The five notes in suit are identical in form, and each of them starts with the unequivocal promise of the defendant, for value received, to pay to the bearer or, if registered, to the registered holder thereof, the sum of $1,000 on the 1st day of September, 1921, at the office of J. P. Morgan & Co., in the borough of

Manhattan, city of New York, in gold coin of the United States of America of, or equivalent to, the present standard of weight and fineness, and to pay interest thereon from September 1, 1918, at the rate of seven percentum per annum, payable in like gold coin, at such office, semi-annually on the first day of March and the first day of September in each and every year until the payment of said principal sum, but only upon presentation and surrender of coupons annexed thereto for such interest, as severally they mature, without deduction from such interest for Federal income taxes (except for any such Federal income tax in excess of two per cent), which the company or the trustee under the indenture hereinbefore mentioned may be required or permitted to pay at the source. In said primary provision of said notes there is the express promise of the defendant to pay to the bearer the said sum of $1,000 on the day and at the place stated, together with interest at seven per cent. Nowhere in the notes is there any qualification or limitation whatever of the positive promise to pay, nor do the notes contain any restriction whatever to the holders' right to sue to recover upon the said primary indebtedness. Following such unequivocal promise to pay, each of the notes contains the following provision: " This Note is one of an issue of Notes for the aggregate principal sum of $33,400,000, all equally and ratably secured by an indenture dated September 1, 1918 (hereinafter termed ' Collateral Indenture ') duly executed and delivered by the Company to . Bankers Trust Company, Trustee, pledging to and with said Trustee $52,187,000 principal amount of the First and Refunding Mortgage Bonds of the Company (hereinafter referred to as the ' pledged bonds ') as set forth in the Collateral Indenture, to which Indenture reference is hereby made for a description of the nature and extent of the security and the rights of the holders of the Notes and coupons and of the Trustee *in respect of such security.*" (Italics are the writer's.)

Following this provision, each of the notes contained provisions with reference to the redemption thereof by the maker, the exchange of said notes, at the option of the holder, for pledged bonds of the defendant; that no recourse for payment of the bonds or interest on said notes should be had against any officer, director or stockholder of the company; and with reference to the transfer of said note by delivery thereof. It is perfectly plain that by the subsequent provision of said note above quoted, referring to the collateral indenture, the parties in nowise intended to affect the primary liability of the maker of said notes to the holders thereof for the principal and interest secured thereby. It is likewise clear that section 13 of the collateral agreement, hereinbefore quoted, merely

denied the holders of the notes " any right to institute any suit, action or proceeding in equity or at law *for the enforcement of this indenture*, or for the execution of any trust hereof, or for the appointment of a receiver, or for any other remedy hereunder, * * *," and reposes in the trustee the enforcement of the provisions of the collateral trust agreement and the securing to the noteholders of any benefits thereunder. It is provided by said collateral trust agreement that it was " understood and intended that no one or more holders of notes and coupons shall have any right in any manner whatever *to affect, disturb or prejudice the lien of this indenture* by his or their action, or to enforce *any right hereunder*, * * *." But the action at bar is not to affect, disturb or prejudice the lien of the collateral indenture or to enforce any right thereunder. The action is solely for the purpose of recovering on defendant's primary obligation to pay said moneys, with interest. I am unable to conceive of any reason why plaintiff should be denied the right to proceed against the defendant upon said primary obligation independently of the collateral agreement executed for the security of the noteholders. The remedies are entirely separate and distinct. (*Elder* v. *Rouse*, 15 Wend. 218; *Kimber* v. *Gunnell Gold Mining & Milling Co.*, 126 Fed. Rep. 137; *New York Trust Co.* v. *Michigan Traction Co.*, 193 id. 175.)

The clause in the collateral trust agreement that " no holder of any note hereby secured shall have any right to institute any suit, action or proceeding in equity or at law *for the enforcement of this indenture or for the execution of any trust hereof, or for the appointment of a receiver, or for any other remedy hereunder*, unless * * *," was not inserted in, and formed no part of, the notes in suit. Neither the plaintiff nor the holder of any of said notes was a party to said collateral trust indenture, and, therefore, the holder of said notes is in nowise bound by said clause. (*Rothschild* v. *Rio Grande Western R. Co.*, 84 Hun, 103; affd., 164 N. Y. 594.) Moreover, as before stated, the present action is not barred by the clause in question, as the action is not to enforce the indenture or any rights thereunder, or to secure any remedy or relief therein provided. The action is by the holder of the notes against the maker on the maker's primary obligation to pay the debt evidenced by said notes. Such an action is not prohibited by said clause of the collateral trust indenture. Said clause relates solely to the enforcement of the collateral security for the payment of said notes, and in no manner affects the action upon the notes themselves. The law has long been well settled that one holding a primary obligation to pay money secured by mortgage may bring action to recover upon the

51

primary obligation without seeking to enforce the security. (*Jones* v. *Conde*, 6 Johns. Ch. 77; *Wadsworth* v. *Lyon*, 93 N. Y. 201; 27 Cyc. 1274.)

As to the defense raised in the answer that the plaintiff is not the real party in interest, such defense, it seems to me, merits little consideration. At most, the allegation contained in the answer was the statement of a conclusion of law, and the answer contains no allegation of any facts in support thereof. The notes in suit are payable to the bearer, and they are in the plaintiff's possession and produced by the plaintiff, and payment thereof to the plaintiff will protect the defendant from the claims of third parties. I think this is the proper test as to whether or not the plaintiff is the real party in interest. (*People's National Bank* v. *Rice*, 149 App. Div. 18; *Madison Square Bank* v. *Pierce*, 137 N. Y. 444; *Meinhardt* v. *Excelsior Brewing Co.*, 98 App. Div. 308, 311; *St. James Co.* v. *Security Trust & Life Ins. Co.*, 82 id. 242, 246; affd., 178 N. Y. 560.)

The second and separate defense contained in the answer, as to the pendency of the Federal suit, is likewise without merit. In the first place, the pendency of a Federal suit, even were it between the same parties and for the same notes, would be no defense to an action in the State courts, notwithstanding that the Federal court is in the same district as the State court. (*Curlette* v. *Olds*, 110 App. Div. 596; *Oneida County Bank* v. *Bonney*, 101 N. Y. 173.) But here the Federal suit alleged in the answer is not between the same parties, but the action is brought by the Continental Securities Company, as plaintiff, against the defendant. I think the court properly disregarded such defense, and held the same to be frivolous.

If any salutary effect is to be derived from rule 113 of the Rules of Civil Practice, the case before us is one for the application of such rule. I do not think the answer interposed by the defendant raised any issue whatever to plaintiff's cause of action. The court properly set aside the notice for the examination of the plaintiff's officers for the reason that, as the defenses interposed were insufficient in law, none of the matters concerning which such examination was asked had any pertinency to the issues attempted to be raised by the defendant's answer.

The order appealed from should be, in all things, affirmed, with ten dollars costs and disbursements.

Laughlin, Dowling and Smith, JJ., concur; Greenbaum, J., concurs in result.

Order affirmed, with ten dollars costs and disbursements.